# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **BONITA L. PAYNE,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:10CV00071 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Lewey K. Lee, Lee & Phipps, PC, Wise, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Ameenah Lloyd, Regional Assistant Counsel, Robert Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Bonita L. Payne filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act ("Act"), 42

U.S.C.A. §§ 401-433, 1381-1383d (West 2003 & Supp. 2011).  Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Payne filed for benefits on October 4, 2006, alleging she became disabled on August 15, 2006.  Her claim was denied initially and upon reconsideration.  Payne received a hearing before an administrative law judge ("ALJ"), during which Payne, represented by counsel, and a vocational expert testified.  The ALJ denied Payne's claim, and the Social Security Administration Appeals Council denied her Request for Reconsideration.  Payne then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues.  The case is ripe for decision.

II

Payne was 35 years old when she applied for benefits, making her a younger person under the regulations.  20 C.F.R. § 404.1563(c) (2011).  Payne has a high school diploma but took special education classes.  She lives with her young son.  She has worked in the past as a cashier and a housekeeper.

In January 2007, Payne began seeing Michael Williams, LCSW, for symptoms of depression and anxiety.  She presented with a depressed mood and affect but had intact orientation and through process, no paranoia or delusions, and

fair judgment and insight.  Williams diagnosed Payne with a major depressive disorder and generalized anxiety disorder.  He assessed her with a Global Assessment of Functioning (GAF) score of 47.[1]

In March 2007, Williams completed an assessment of Payne's ability to work.  He opined that Payne has no useful ability to interact appropriately with supervisors or respond appropriately to work pressures in a usual work setting.  He also opined that Payne was seriously limited in her ability to interact with the public and co-workers and to respond to changes in a routine work setting.

In May 2007, B. Wayne Lanthorn, Ph.D., conducted a consultative evaluation of Payne.  Payne arrived on time and unaccompanied, reported that she was living with her boyfriend who received disability benefits, and was oriented to person, place, time, and circumstance.  Payne had no signs of delusional thinking, hallucinations, or homicidal or suicidal ideation.  Payne had coherent thought processes and only mild signs of anxiety.  Dr. Lanthorn diagnosed Payne with moderate major depressive-like episode and anxiety disorder due to chronic physical conditions.  He assessed a GAF score between 61 and 65, indicating mild

---

[1] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

symptoms or mild difficulties.  He opined that Payne could relate to co-workers, supervisors, and the public and could work 40 hours per week.

That same month, Louis Perrott, Ph.D., another state agency psychologist reviewed the evidence and found that Payne had a major depressive disorder and a generalized anxiety disorder.  He found mild restrictions of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation.  He determined that the evidence did not establish a presence of the "C" criteria necessary to meet a listing.  He opined that Payne had, at most, some moderate limitations in her mental functioning and could sustain a work routine, complete a normal workweek, and interact with the public, co-workers, and supervisors.

In January 2008, Payne visited Ralph Ramsden, Ph.D., for a psychological evaluation.  Dr. Ramsden reported that Payne had mild anxiety but did not appear overtly depressed.  Payne was cooperative, polite, and friendly and actively participated in the evaluation.  He diagnosed dysthymic disorder and panic disorder without agoraphobia.  He found that Payne had no suicidal ideation, hallucinations, or delusions.  He assessed Payne with a GAF score of 45, indicating serious symptoms or limitations.  He also completed an assessment of Payne's abilities.  He opined that Payne had good ability to follow work rules, maintain

attention and concentration, and carrying out simple job instructions.  He found fair-to-poor ability in all other areas.  He indicated that she would be absent from work more than two days per month due to her impairments or treatment.

In June 2008, Williams opined that Payne had no useful ability to relate to co-workers, deal with the public, use judgment with the public, deal with work stresses, function independently, or relate predictably in social situations.  He opined that she was seriously limited in her ability to follow work rules, interact with supervisors, maintain attention and concentration, behave in an emotionally stable manner, and demonstrate reliability.  He opined that she would miss work more than two days a month.

In December 2008, Payne had an evaluation with Robert Spangler, Ed.D.  Dr. Spangler reported that Payne was alert and oriented, had good eye contact, appropriate affect, and was cooperative, compliant, and forthcoming.  He observed that Payne had a sad appearance and had erratic concentration.  She had adequate social skills, related well, and had adequate recall of remote and recent events.  Dr. Spangler diagnosed moderate to severe post-traumatic stress disorder and mild to moderate dysthymic disorder.  He assigned a GAF score of 50-55, indicating moderate to severe symptoms or limitations.  Dr. Spangler completed an assessment of Payne's abilities and opined that she had good ability to follow simple rules and instructions and to maintain her personal appearance.  He opined

that she had fair to poor ability in all other categories and would have to miss work about two days per month.

After reviewing Payne's records, the ALJ determined that she had severe impairments of traumatic and degenerative joint disease, hypothyroidism, dysthymia, and panic disorder but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment.  Taking into account Payne's limitations, the ALJ determined that Payne retained the residual functional capacity to perform a significant range of light and sedentary work, subject to some limitations. Payne could perform work that did not require her to climb ladders, scaffolds, or rope; did not require her to walk or stand for more than six hours per day; did not require her to life or carry more than ten pounds frequently or 20 pounds occasionally; and did not expose her to hazardous heights or moving machinery.  The ALJ also noted that Payne's mental impairments gave her moderate limitations in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace.  Based on this residual functional capacity and testimony of a vocational expert, the ALJ determined that Payne could perform her past relevant work as a cashier.

Payne argues that the ALJ's decision regarding her mental impairments is not supported by substantial evidence.  For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DIB and SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Payne argues that the ALJ's decision was not supported by substantial evidence because the ALJ did not give full consideration to the opinions of Dr. Ramsden and Williams with regard to Payne's mental impairments.

The ALJ gave little weight to Dr. Ramsden's assessment of Payne's abilities, reasoning that Dr. Ramsden's clinic test notes were inconsistent with his severe findings about Payne's abilities. Additionally, Dr. Ramsden provided no reasons for his opinion that Payne would miss more than two days of work each month. The ALJ did not err in discounting Dr. Ramsden's severe findings and conclusion

about Payne's absenteeism because the opinion was unsupported by the record. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) (2011).  Dr. Ramsden's notes indicate that Payne had only mild anxiety and did not appear overtly depressed, had no suicidal intent or ideation, and had no hallucinations or delusions.

The ALJ also afforded little weight to the opinion of Williams, a social worker.  A social worker is not an acceptable medical source for evidence of impairment under the regulations.  *See* 20 C.F.R. §§ 404.1502, 404.902, 404.1513(a), 416.913(a) (2011).  Rather, evidence from a social worker is only appropriate to show the severity of an impairment and how it affects one's ability to work.  20 C.F.R. §§ 404.1513(d), 416.913(d).  Opinions of "other sources," such as social workers, need not be assigned controlling weight.  *See Russell v. Astrue*, No. 2:10CV00005, 2010 WL 4027786, at *4 (W.D. Va. Oct. 14, 2010), *aff'd*, No. 10-2348, 2011 WL 2938067 (4th Cir. July 22, 2011) (unpublished).

Furthermore, when an opinion is not supported by clinical findings and is inconsistent with the record as a whole, it may be afforded less weight.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  As the ALJ noted, the reports from Williams do not refer to any clinical mental health testing and are inconsistent with other evidence in the record, such as the findings of Dr. Lanthorn.

The ALJ properly weighed the opinions of Dr. Ramsden and Williams with the other medical evidence in the record and the testimony offered at the hearing.

Notably, the ALJ did not fully reject the opinions of Dr. Ramsden and Williams. Indeed, he recognized that Payne had mild limitations in her activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace. The limitations imposed were supported by substantial evidence.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   October 19, 2011

/s/  James P. Jones
United States District Judge